IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | No. 24-375 |
| | : | |
| RAHKIR BIBBS | : | |

**McHUGH, J.**                                                                                                    **March 12, 2025**

### MEMORANDUM

Defendant Rahkir Bibbs stands charged with unlawful possession of a firearm by virtue of his status as a convicted felon. This case originated from an encounter between Defendant and Philadelphia police. The defense contends that Mr. Bibbs was unlawfully stopped, with the result that the weapon seized must be suppressed as evidence. At first glance, the arresting officers' account of events seems improbable. But having conducted an evidentiary hearing, I find the officers' testimony to be credible and consistent with the body camera footage available. I conclude that there was a reasonable basis on which to stop Mr. Bibbs, and further conclude that he had not been seized when he tendered his firearm to police.

Although warrantless searches are generally disfavored, it is well established that an officer may stop and briefly detain a potential suspect where "the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000).

The evidence shows that on September 18, 2024, Philadelphia Police Officers Daniel Mitchell and Cein Strange were on patrol as members of a proactive tactical squad. At approximately 9:00 PM they were investigating a robbery reported at the Fern Rock Transit Center, and as part of that investigation were touring the area with an eyewitness. Near 5th St. and 64th

Ave., approximately one mile from the robbery site, they observed the individual later identified as Mr. Bibbs. He caught their attention because he was wearing what appeared to be a heavy sweatshirt with the hood pulled up and a ski mask obscuring his face, which was noteworthy because it was approximately 75 degrees.

He did not match the description of the suspect from the Fern Rock robberies and the officers did not stop him, as it would violate police policy to conduct an investigative stop with a civilian in their vehicle. They transported the witness home and radioed other members of their squad to try to locate the individual. Significantly, although the officers were in uniform, they were in an unmarked car – so the individual they observed would not necessarily have recognized that they were police officers. At least 10 minutes elapsed before the officers were able to return to the area, observing the same individual only two blocks from initial contact, suggesting that he had lingered in the area.

Although the individual did not match the flash description of the Fern Rock suspect, the officers were aware that there had been two other recent robberies on Lawrence Street, a small street running immediately parallel to where they observed Mr. Bibbs upon return, still masked and hooded. The officers' unmarked vehicle was equipped with lights and siren, but they did not engage them. Rather, they pulled up adjacent to Mr. Bibbs and identified themselves as police officers. Video evidence shows the officers approaching at a modest rate of speed. Officer Strange, sitting in the passenger seat, asked Mr. Bibbs if he would take down his mask as they were investigating a robbery. Mr. Bibbs complied and kept walking. Officer Strange noticed that Mr. Bibbs was holding his cell phone in his hand and appeared to have a large bulge in the front pouch of his sweatshirt. He then inquired whether Mr. Bibbs had a gun, to which he replied no and kept walking, crossing directly in front of the police vehicle. Officer Mitchell then repeats the

inquiry from the driver's seat and asks Mr. Bibbs if he can check. Neither officers' body camera captured the entire audio exchange. But the video shows the officers remaining in their vehicle, and Mr. Bibbs crossing in front of the cruiser. It also shows Mr. Bibbs standing by the side of the cruiser as the audio is triggered. Both officers testified that Mr. Bibbs volunteered the presence of a weapon, and as the audio engages, Officer Mitchell can be heard saying in a calm voice, "don't reach for it" to which Mr. Bibbs replies in an equally calm voice "I'm not," whereupon Officer Mitchell says "all right," and begins to exit the vehicle. D2, at 1:01. Mr. Bibbs then says, "you can take it." Throughout the recordings, the tone of the officers and the suspect alike is calm.

As to the existence of reasonable suspicion, I am persuaded that the officers had reasonable grounds based upon 1) Mr. Bibbs' attire – improbably warm on a late summer night, accompanied by a ski mask; 2) his lingering presence in an area where there had been two recent robberies; and 3) the bulge in his sweatshirt which the officers could readily associate with the possible presence of a firearm, particularly when it could not be explained by a cell phone, which was seen in his hand. As to the last factor, Officer Strange, a firearms instructor in the Marine Corps, noted that it was a larger pistol typically used for target shooting, with an attached optical site making the footprint that much larger.

The defense correctly observes that nothing about Mr. Bibbs' description would readily associate him with the recent robberies, but given the totality of the circumstances, it was logical for police to inquire. And although the defense is also correct that the absence of plastic bags in Philadelphia stores results in more purchases stashed in pockets, Mr. Bibbs was not coming from the direction of the nearby 7-11 store, but rather walking parallel to it, and there were no others stores in the immediate vicinity.

Nor can it be said that the police seized Mr. Bibbs. A seizure is defined as an "application of physical force to restrain movement," or a "submission to a show of authority" by a police officer. *California v. Hodari D.,* 499 U.S. 621, 626 (1991). Here, no officer touched Mr. Bibbs until he invited police to take the weapon, which was clearly captured on audio.

The question then is whether the Defendant submitted to a show of police authority. Among the relevant factors are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Here, the officers never even left their vehicle until the presence of a weapon was confirmed, and although other officers were nearby, no lights or sirens were engaged as they pulled up to the scene. The officers persisted with their question as to whether Mr. Bibbs was armed, but the Court of Appeals has held that such persistence does not necessarily convert an encounter into a seizure. *United States v. Smith,* 575 F.3d 308, 314 (3d Cir. 2009). In fact, the Circuit's description of the facts in Smith mirrors the record here: "At this stage in the encounter, when the District Court found the first seizure was made, the two officers were still in their car, neither officer displayed his weapon, there was no physical touching, and no indication as to the language or tone of the officer's voice that might have signaled a clear show of authority." *Id.*

The defense suggests that the officers asserted authority by maneuvering their vehicle to cut off Mr. Bibbs' ability to walk away, citing *United States v. Amos,* 88 F.4th 446 (3d Cir. 2023). But in *Amos* the officers parked their marked police car against the flow of traffic midway in an alley where the defendant was walking, directly in the suspect's path of travel, and then commanded him to stop and show his hands. *Id*. at 452. Here, Mr. Bibbs was stopped on a two-

4

way street where the officers were proceeding with the flow of traffic when they first engaged with him, after which he crossed in front of them and had open space all around him, while they continued to sit in their vehicle.

The defense also points to Officer Strange's summary given to a responding sergeant and captured on body camera following the incident. The audio is not entirely clear, but Officer Strange's account seems to describe Officer Mitchell as summoning Mr. Bibbs after he walked in front of the cruiser, "come on over here. Let me just, can I see if you have a gun in your pants, and he's like, ah you can just take it." Ex. D4B at 1:20. As Officer Strange describes the encounter on the body camera, he recounts it as having a conversational tone. This is borne out by all the exchanges captured on audio, on the part of both the officers and Mr. Bibbs.

Significantly, Officer Mitchell posed his request in the form of a question, not a command, asking permission to check. Merely summoning a person or requesting their cooperation does not, without more, amount to assertion of authority. *United States v. Pigford,* 534 F. Supp. 3d 443, 452 (E.D. Pa. 2021) (finding no show of authority even if officers said "hold up" or "come here, let me talk to you"); *United States v. Dupree,* No. 08-00236, 2008 WL 2522432, at *1-2 (E.D. Pa. June 24, 2008). And all the subsequent exchange captured on audio is consistent with Mr. Bibbs having voluntarily surrendered the weapon.

Once the weapon was identified, it was appropriate for Officer Strange to inquire whether Mr. Bibbs had a permit to carry, thereby avoiding unnecessary detention, and probable cause existed once it was established that he did not.

Mr. Bibbs has not established a violation of his Fourth Amendment rights, and the motion to suppress must therefore be denied.

/s/ Gerald Austin McHugh
United States District Judge
